IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **STROM SMITH** § | | **PLAINTIFF** |
| § | | |
| § | | |
| **v.** § | **CIVIL ACTION NO. 1:06CV1197-LG-JMR** | |
| § | | |
| § | | |
| **ST. PAUL FIRE & MARINE** § | | |
| **INSURANCE COMPANY, INC.** § | | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the Motion for Summary Judgment [54] filed by Defendant St. Paul Fire & Marine Insurance Company, Inc. and the Motion to Strike the Affidavit of Cynthia Love [76] filed by Plaintiff Strom Smith.  Upon reviewing the submissions of the parties and the relevant law, the Court finds that Plaintiff's good faith participation in the appraisal process required by the policy was a condition precedent to proceeding with a lawsuit against St. Paul. Therefore, this lawsuit must be dismissed without prejudice.

### FACTS

On August 9, 2005, Plaintiff's thirty-five foot Cabo yacht was damaged when it collided with a submerged vessel.  The yacht was insured by a Seahorse Underwriters Policy (policy number SH00250075) issued by Defendant for the period March 18, 2005, though March 18, 2006.  (Ex. A to Def.'s Mot.)  The declarations page of the policy provides that the "Amount of Insurance and Agreed Value" of the boat and boating equipment is $450,000.  (Ex. B to Pl.'s Resp.)  The deductible applicable to the boat and boating equipment is $4500.  (Ex. B to Pl.'s Resp.)  Plaintiff contends that the yacht should be considered a total loss pursuant to the terms of Defendant's policy, but Defendant contends that the vessel could be repaired at a cost of $186,893.80.  The

policy provides that "total loss" "means the cost of recovery or repair exceeds 80% of the agreed value." (Ex. A to Def.'s Mot. at 6)  The policy also provides:

> **Appraisal of Property Disputes**
> If agreement can't be reached on the amount of loss or the value of your boat, the following procedure will be used.
> 1. One of us will make a written demand for appraisal.
> 2. Each will select a competent and impartial appraiser and notify the other of the selection within 30 days of the demand.
> 3. The appraisers will select a competent and impartial umpire.  If they can't agree on an umpire, either may ask that one be selected by a judge of a court having jurisdiction.
> 4. The appraisers will state separately the amount of the loss and the value of your boat.  If they don't agree, they'll submit their appraisals to the umpire.  Agreement of two out of three will be binding.
>
> You'll pay your appraiser and we'll pay ours.  Both you and the insurance company will equally share other costs of the appraisal and the umpire.
>
> If we submit to an appraisal, we'll still retain the right to deny the claim.

(Ex. A to Def.'s Mot. at 2)  The policy also provides: "No one can sue us to recover under this policy unless the party has complied with all the terms of the policy."  (Ex. A to Def.'s Mot. at 2). Defendant contends that each party consented to appraisal and identified an impartial appraiser, but Plaintiff refused to cooperate in appointing an umpire.  Plaintiff filed this lawsuit on October 23, 2006, in the Circuit Court of Harrison County, Mississippi, and Defendant removed the lawsuit to this Court.

The following is a timeline of the handling of Plaintiff's claim, derived from exhibits presented to the Court:

August 9, 2005         The boat was damaged when it struck a submerged vessel.

January 17, 2006     St. Paul adjuster Cynthia Love sent a letter to Plaintiff stating:

-2-

        We have agreed that retaining an engineer in this matter is a reasonable request and we are in the process of locating one local to the area of the vessel to retain. As soon as we have identified an engineer, I will advise you and provide you with his contact information.

        Regarding your request that we consider determining the vessel a constructive total loss, I have been instructed to advise you that, at this time, we will adhere to the requirement of the policy that the vessel be repaired. However, we can revisit this request after we have reviewed the engineer's report.

        (Ex. E to Pl.'s Resp.)

| | |
|---|---|
| January 18, 2006 | St. Paul's surveyor, Matthew Schmahl, drafted a report estimating the cost of repair of the vessel to be $186,893.80. (Ex. C to Def.'s Mot.) |
| March 15, 2006 | Love sent an email to Plaintiff presenting three options: (1) settling the claim for $200,000, based on the original repair cost of $185,150.00, Matt Schmahl's estimate of $186, 779.70, and a quote from Dog River Marina for $189,000.00; (2) paying $325,000 less the deductible to "total the vessel;" or (3) proceeding with the appraisal process. (Ex. D to Def.'s Mot.) |
| March 23, 2006 | Plaintiff responded to Love's email and stated that he had hired Roland Santos of Alpha Marine Surveyors to inspect the yacht. (Ex. D to Def.'s Mot.) |
| April 3, 2006 | Love sent a letter to Plaintiff that stated: "This letter serves to acknowledge receipt of your emailed message advising that you have selected . . . Santos . . . as the expert to represent you in the requested appraisal process of this claim." She also explained the appraisal process to Plaintiff. (Ex. D to Def.'s Mot.) |
| May 16, 2006 | Santos drafted a report estimating that the cost of repairing the yacht would be $381,740.00. (Ex. F to Pl.'s Resp. at 26) |
| June 14, 2006 | Love sent a letter to Plaintiff requesting cooperation in the selection of an umpire for the appraisal process. (Ex. F to Def.'s Mot.) |
| June 14, 2006 | Plaintiff sent an email to Love stating that he wanted to review all of the inspection reports that he had received and evaluate his position before responding to her request for cooperation in selecting an |

-3-

|  |  |
|---|---|
|  | umpire.  He stated that he was in no rush and did not need the funds on any particular schedule.  (Ex. F to Def.'s Mot.) |
| August 30, 2006 | Plaintiff's lawyer sent a letter to Love asserting that there was no arguable basis for denying payment and requesting payment within ten days because the yacht is a total loss.  (Ex. G to Def.'s Mot.) |
| October 23, 2006 | Plaintiff filed this lawsuit against St. Paul. |

Plaintiff has also produced a portion of an undated report written by John R. Bond, a marine engineer and surveyor, who estimated that repair of the vessel would cost $270,000.  However, he stated in his report: "It is the strong advice from this observer that this boat not be repaired."  (Ex. H to Pl.'s Resp.)  Bond also stated that he had contacted Cabo Yachts concerning the condition of the yacht, and Cabo opined that the yacht had been damaged beyond repair because the fuel tank was damaged and the structural integrity of the vessel had been compromised.  (Ex. H to Pl.'s Resp.)[1]  Mr. Bond also stated: "Any structure can be repaired.  However, every repair is a compromise of the original structure.  No one can guarantee a successful fiberglass repair."  (Ex. H to Pl.'s Resp.)

After one year of litigation, Defendant filed a Motion for Summary Judgment, requesting that the Court dismiss Plaintiff's claims without prejudice and require him to proceed with the appraisal process prior to further pursuing litigation.  Plaintiff requested time in which to respond to the Motion, so that he may conduct additional discovery.  He asserted that the appraisal clause does not apply to his claim.  The Court granted Plaintiff time in which to conduct the discovery, and Plaintiff filed a Response to the Motion.

## DISCUSSION

---

[1] Plaintiff has produced a copy of the email from Joseph Obermann of Cabo Yachts that states "Yes, from the info given to Cabo the tank was damaged beyond repair and the structural integrity of the vessel compromised.  It is Cabo's stance, this vessel is damaged beyond repair." (Ex. I to Pl.'s Resp.).

Pursuant to FED. R. CIV. P. 56, any party to a civil action may move for a summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law.  A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Celotex Corp. v. Catrett,* 477 U.S. at 324-25.  The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986).

> The Mississippi Supreme Court has explained:
>
> The courts have generally held that it is the duty of both parties to an insurance contract which provides for a submission of appraisal, in case of loss, of the question of the amount of loss or damages suffered, to act in good faith and to make a fair effort to carry out such agreement and accomplish its object.  And if an appraisal is a condition precedent to an action on the policy, and the failure to secure an award by an appraisal is due to the fault of the insured, the absence of such award is a bar to an action on the policy by him.

*Hartford Fire Ins. Co. v. Conner*, 79 So. 2d 236, 240 (Miss. 1955).  The Court also quoted the following language:

> [W]here arbitration is made a condition precedent to recovery on the policy, the failure or refusal of the insured, without cause, to submit the adjustment of the loss to appraisers or to allow the continuance of arbitration or appraisal in accordance with the provisions of the policy is a valid defense to an action on the policy.

*Conner*, 79 So. 2d at 240 (quoting 29 AM. JUR. *Insurance* 939).

In his response to the Motion for Summary Judgment, Plaintiff has not asserted that the

appraisal clause is unenforceable, illegal, or unconscionable.  Additionally, he has not alleged that St. Paul waived the appraisal clause and has not cited any authority supporting a determination that an insured is not required to comply with an appraisal clause in an insurance policy.  Rather, Plaintiff asserts that the appraisal clause does not apply in this case because it is "undisputed" that the yacht was a total loss.  However, a "total loss" is defined under the policy as "the cost of recovery or repair exceeds 80% of the agreed value."  (Ex. A to Def.'s Mot. at 6).  St. Paul contends that the yacht is not a total loss, relying on the testimony of its marine surveyor, Matthew Schmahl.  Although Plaintiff contends that Schmahl's report should be discredited, there is no genuine issue of material fact that the parties have not reached an agreement as to the amount of loss, thus triggering the appraisal clause under the policy.

     Plaintiff also asserts that St. Paul acted in bad faith by delaying in paying him $186,893.80, since there is no dispute that the yacht suffered at least that amount of damage, based on Schmahl's estimate.  Additionally, Plaintiff argues that St. Paul breached its duty to continue to investigate the claim and failed to consider reports provided by his experts after the appraisal process was initiated.  Furthermore, Plaintiff asserts that St. Paul made a misrepresentation that an estimate had been received from Dog River Marina to repair the yacht for $189,000.00 and that St. Paul agreed to hire an engineer to inspect the yacht but failed to do so.  Although troublesome, these allegations do not excuse Plaintiff's refusal to participate in the appraisal process that was agreed to by the parties in the insurance policy.  Plaintiff cannot assert these claims against St. Paul in a lawsuit until after the appraisal process has been completed.

## CONCLUSION

     There is no genuine issue of material fact that the appraisal process was triggered by the parties' dispute regarding the amount of loss.  St. Paul demanded an appraisal, but Plaintiff refused

to cooperate in selecting an umpire as required by the policy's terms. Pursuant to the plain language in the policy, Plaintiff is required to participate in the appraisal process in good faith to its completion before he can proceed with this lawsuit alleging bad faith. (Ex. A to Def.'s Mot. at 2) Therefore, this case must be dismissed without prejudice so that the appraisal process can be completed.

The Court notes that Plaintiff has filed a Motion to Strike the Affidavit of Cynthia Love, which was submitted in support of St. Paul's Rebuttal. Since the Court has not relied upon the affidavit in determining that St. Paul is entitled to summary judgment, the Court finds that the Motion to Strike is moot.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [54] is **GRANTED**. This case is hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion to Strike the Affidavit of Cynthia Love [76] filed by Plaintiff Strom Smith is **MOOT**.

**SO ORDERED AND ADJUDGED** this the 29th day of February, 2008.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE